UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

CHAZ SIMMONS,

        Plaintiff,

v.

ISLE OF CAPRI BLACK HAWK, L.L.C., a Colorado corporation,
CCSC/BLACKHAWK, INC., a Colorado corporation, and
ELDORADO RESORTS, INC., a Nevada corporation,

        Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff, Chaz Simmons, by and through his attorneys, HKM Employment Attorneys, LLP, for his Complaint and Jury Demand against Isle of Capri Black Hawk, L.L.C. (the "Isle" casino), CCSC/Blackhawk, Inc. (the "Lady Luck" casino), and Eldorado Resorts, Inc. ("Eldorado") (collectively, "Defendants" or the "Company"), states and alleges as follows:

### PRELIMINARY STATEMENT

1.    This is an employment discrimination case arising from Defendants' failure to accommodate, discrimination toward and constructive termination of Plaintiff because of his actual and/or perceived disability (asthma, severe allergies), in violation of the Americans with Disabilities Act, as amended ("ADA") and the Family and Medical Leave Act ("FMLA").

2.    More specifically, on or about November 21, 2018, Plaintiff, a Table Games Dealer, engaged in the protected activity of requesting the reasonable accommodation of intermittent leave

under the FMLA related to his actual and/or perceived disability. Plaintiff also requested the reasonable accommodation of not having to deal craps, given that the physical requirements of the game made it difficult for Plaintiff to breathe. Defendants never responded to Plaintiff's requested accommodation of not having to deal craps, and effectively denied Plaintiff's request for a reasonable accommodation without engaging in an interactive process in good faith. As a result, Plaintiff was forced to exhaust his intermittent FMLA leave due to exacerbated symptoms caused by being required to deal craps with increasing frequency.

3. Two days after Plaintiff's protected requests for reasonable accommodation and FMLA leave, on or about November 23, 2018, Plaintiff was subjected to harassing text messages from the Company's manager, Ashley Scotti, about Plaintiff's request for FMLA leave. Ms. Scotti texted Plaintiff, "You've got to be f*cking kidding me", "I'm so pissed right now", "There's nothing wrong with you!" Plaintiff asked why Ms. Scotti was so mad and said that he hoped there would be no retaliation because he had already told human resources that FMLA retaliation was a big problem in their department. Ms. Scotti replied," Then why would you go and get it? If you already know how big of a problem it is and don't you ever say retaliation again!"

4. Plaintiff engaged in the protected activity of reporting Ms. Scotti's retaliatory harassment to human resources. Thereafter, Plaintiff was subjected to retaliatory harassment from multiple members of management for months while Plaintiff continually reported further harassment to human resources during its purported investigation of Plaintiff's complaints and its failure to take prompt remedial action reasonably calculated to get the harassment to stop.

5. In or around the week of January 7, 2019, Defendants finally terminated Ms. Scotti for the retaliatory text messages she had sent Plaintiff more than six weeks earlier. However,

human resources, upon information and belief, took no corrective action to stop the retaliatory harassment Plaintiff had reported concerning another member of management; despite Plaintiff informing human resources that the stress caused by the retaliation was causing him to experience difficulty breathing at work with escalating frequency.  Human resources further stopped responding to Plaintiff's reports of continuing harassment.  On or about February 19, 2019, if not sooner, Plaintiff's work conditions became objectively and subjectively intolerable and he was forced to accept the Company's constructive termination of his employment.

## PARTIES

6. At all times relevant to this Complaint, Plaintiff is and was a resident of Colorado.

7. Defendant Isle of Capri Black Hawk LLC (the "Isle" casino) is, and at all times relevant to this Complaint was, a Colorado limited liability company with a principal office at 401 Main Street, P.O. Box 777, Black Hawk, Colorado 80422.

8. Defendant CCSC/Blackhawk, Inc., d/b/a Lady Luck Casino Black Hawk (the "Lady Luck" casino) is a Colorado corporation with a principal office at 340 Main Street, P.O. Box 22, Black Hawk, Colorado 80422.

9. Defendant Eldorado Resorts, Inc. ("Eldorado") is a Nevada corporation headquartered at 100 West Liberty Street, Suite 1150, Reno, Nevada 89501.  Eldorado owns and operates hotels and casinos in various states across the country, including the Isle and the Lady Luck casinos in Colorado.

10. The Isle and Lady Luck casinos are adjacent Colorado casinos owned by Eldorado. Defendants required Plaintiff to work at both the Isle and the Lady Luck casinos.  During Plaintiff's employment, Defendants shared management and human resources personnel, as well as the same

employment handbook, personnel and payment policies, and rules. Defendants are deemed a single employer of Plaintiff by virtue of their centralized control of employment practices, common management, interrelations of operations, and common ownership or financial control. Defendants are therefore jointly and severally liable on all claims asserted in this action.

11. Defendants further shared or co-determined the essential terms and conditions of Plaintiff's employment and had the authority to and did exercise significant control over the same employees, including Plaintiff. All Defendants had the authority to and did promulgate work rules and assignments for Plaintiff and set Plaintiff's conditions of employment, including his compensation, benefits and hours, employee discipline and supervision, and control of employee records. Defendants are Plaintiff's joint employers on all claims asserted in this action.

## JURISDICTION AND VENUE

12. Plaintiff incorporates by reference the above paragraphs as though set forth separately and fully herein.

13. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

15. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

16. Plaintiff filed his Charge of Discrimination Number 32A-2019-00752 with the Equal Employment Opportunity Commission ("EEOC") against Eldorado for disability

discrimination and retaliation on or about May 30, 2019. Plaintiff was issued a Notice of Right to Sue from the EEOC on March 17, 2020, and Plaintiff has filed the present action within ninety (90) days of receipt of same.

17. Plaintiff filed his Charge of Discrimination Number 32A-2019-00753 with the Equal Employment Opportunity Commission ("EEOC") against the Isle casino for disability discrimination and retaliation on or about May 30, 2019. Plaintiff was issued a Notice of Right to Sue from the EEOC on March 17, 2020, and Plaintiff has filed the present action within ninety (90) days of receipt of same.

18. Plaintiff filed his Charge of Discrimination Number 32A-2019-00750 with the Equal Employment Opportunity Commission ("EEOC") against the Lady Luck casino for disability discrimination and retaliation on or about May 30, 2019. Plaintiff was issued a Notice of Right to Sue from the EEOC on March 17, 2020, and Plaintiff has filed the present action within ninety (90) days of receipt of same.

19. Plaintiff has met all administrative prerequisites prior to filing this action.

## FACTUAL ALLEGATIONS

20. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

21. Plaintiff began working for Defendants in or around May 2015 as a Table Games Dealer at their Colorado casinos.

22. At all times during his employment with Defendants, Plaintiff met or exceeded the Company's legitimate performance expectations.

23. Plaintiff is a disabled person within the meaning of the ADA, in that Plaintiff suffers

5

from asthma and severe allergies. Without taking into account the effects of ameliorative measures, Plaintiff's asthma and severe allergies substantially limit Plaintiff's ability to perform one or major life activities, including Plaintiff's ability to breathe, as compared to the general population.

24. As a result of Plaintiff's actual and/or perceived disability, in or around January 2018, Plaintiff was unable to breathe and ended up being hospitalized in the Intensive Care Unit for two days.

25. Because the beginning of the year is particularly exacerbating for Plaintiff's actual and/or perceived disability, and Plaintiff knew that the Company would be undergoing renovations in January 2019, Plaintiff informed the Company that he intended to request the reasonable accommodation of intermittent leave under the FMLA.

26. On or about November 21, 2018, Plaintiff submitted FMLA paperwork to the Company's human resources requesting intermittent FMLA leave. In doing so, Plaintiff was engaging in the protected activity of requesting an accommodation related to his actual and/or perceived disability.

27. At the same time, Plaintiff also submitted a request for accommodation of being allowed not to deal craps, given that the physical requirements of dealing the game in Defendants' casinos caused Plaintiff breathing difficulties.

28. Plaintiff also spoke with Defendants' Benefits Manager, Jasper Webb, about his requests and told her that he was concerned about having seen other employees being discriminated and/or retaliated against for requesting and using the reasonable accommodation of leave under the FMLA.

29. Ms. Webb advised Plaintiff not to talk about his FMLA leave request with his department.

30. Ms. Webb also told Plaintiff that the Company handles ADA accommodation requests differently than requests for leave under the FMLA; she told Plaintiff that the Company "negotiates" ADA requests.

31. However, Plaintiff never heard any response from the Company concerning his request to be allowed to not deal craps. The Company did not attempt to "negotiate" or engage in an interactive process in good faith concerning Plaintiff's accommodation request. Instead, Plaintiff's request for accommodation was ignored and effectively denied.

32. On or about November 23, 2018, Plaintiff received harassing text messages from the Company's Manager, Ashley Scotti, regarding his protected activity. More specifically, Ms. Scotti asked, "Why did I just get an email saying you have FMLA?" Plaintiff told Ms. Scotti it was true and that Ms. Webb had advised him not to talk to his department about it. Ms. Scotti replied, "You've got to be f*cking kidding me", "I'm so pissed right now", "There's nothing wrong with you!"

33. Plaintiff asked Ms. Scotti why she was so mad and told her that he hoped there would be no retaliation because Plaintiff had already told Ms. Webb that retaliation for FMLA leave was a big problem in their department. Ms. Scotti replied, "Then why would you go and get it? If you already knew how big of a problem it is and don't you ever say retaliation to me again!"

34. Plaintiff also began experiencing retaliatory harassment from another manager, Jim Farrell.

35. For example, Mr. Farrell raised his voice at Plaintiff and began subjecting Plaintiff

to intimidating and hostile behavior. Mr. Farrell also targeted Plaintiff and made an effort to send Plaintiff to deal at the Lady Luck casino more frequently, though Table Games Dealers were supposed to equally share the requirement of having to work at the Lady Luck casino. Dealing at the Lady Luck casino was a less desirable position for the Table Games Dealers, because it was smaller and frequently less busy as compared to the Isle casino, resulting in less opportunities to earn tips from customers.

36. Mr. Farrell also targeted Plaintiff by requiring him to deal craps more frequently, even though Mr. Farrell and the Company knew that dealing craps made Plaintiff experience difficulty breathing.

37. Mr. Farrell also targeted Plaintiff by arbitrarily sending Plaintiff to work at tables with no customers, even though additional dealers' shifts were less than 10 minutes from starting, when the oncoming dealers would have been able to start any new tables Mr. Farrell wished.

38. On or about November 29, 2018, Plaintiff reported Ms. Scotti's retaliatory text messages and Mr. Farrell's retaliatory harassment to the Company's human resources. Plaintiff showed Ms. Webb the retaliatory text messages he had received from Ms. Scotti.

39. In response to Plaintiff also reporting his concerns about Mr. Farrell's retaliatory treatment, Ms. Webb told Plaintiff that he was not the only one that had problems with Mr. Farrell.

40. Ms. Webb told Plaintiff that human resources would investigate his reports of retaliation.

41. Plaintiff met with human resources approximately 4-6 times over the next month to discuss additional retaliatory harassment concerning Mr. Farrell. Plaintiff was repeatedly told (paraphrased), "If Jim continues to retaliate, let us know." Plaintiff accordingly repeatedly

8

reported Mr. Farrell's continuing retaliation, without reasonable or prompt corrective action from human resources.

42. On or about December 21, 2018, Plaintiff heard Ms. Scotti talking to a manager and referring to screenshots. From what Plaintiff could hear, it sounded like Ms. Scotti was talking about human resources' investigation of Plaintiff's reports of retaliation. Plaintiff became concerned that additional members of management would begin to retaliate against him, and he reported those concerns to the Director of Human Resources, Chanda Johnson.

43. Ms. Johnson ended up arranging a meeting with Plaintiff and Ms. Scotti that same day. Ms. Scotti asked Plaintiff why he had "turned her in" to human resources, and Plaintiff repeatedly felt like Ms. Johnson was trying to get Plaintiff to change his opinion about the appropriateness of Ms. Scotti's harassing text messages.

44. During the meeting, Ms. Scotti also said that Mr. Farrell was purportedly put on a final warning because of Plaintiff's reports of retaliation, even though human resources' investigation was not complete at that time.

45. On or about December 30, 2018, as soon as Mr. Farrell arrived for his shift, Mr. Farrell immediately tried to send Plaintiff to the Lady Luck casino to deal craps, even though Plaintiff was already close to the end of his shift. The Table Games Dealers are supposed to equally share the amount of time they are required to deal at Lady Luck, and they are only sent to Lady Luck close to the start of their shifts, so that they have time to clock-in at Lady Luck and perform pre-shift duties at that casino to be ready to deal by the start time of their scheduled shift.

46. However, Mr. Farrell once again targeted Plaintiff to send him to Lady Luck more frequently than other dealers.

47. Ms. Scotti was also responsible for tracking the time each Table Games Dealer spent working at the Lady Luck casino to ensure the time was allocated fairly among the Table Games Dealers.

48. Plaintiff reported this additional instance of retaliatory treatment to human resources. Plaintiff did not hear back from human resources regarding this instance of retaliatory treatment.

49. However, on or about January 7, 2019, Plaintiff received a call from Ms. Johnson. Ms. Johnson told Plaintiff that human resources' investigation was concluded. Ms. Johnson refused to share the conclusions of the investigation with Plaintiff.

50. Upon information and belief, Ms. Scotti was terminated on or about the same day.

51. Mr. Farrell remained employed with the Company.

52. As of January 2019, Plaintiff still had not received any response from the Company regarding his requested accommodation of being relieved from dealing craps. Since his request for accommodation, Plaintiff was required to deal craps with increasing frequency and, when Plaintiff had difficulty breathing as a result, Plaintiff was forced to use FMLA intermittent leave he otherwise would not have needed to use. If Defendants had engaged in an interactive process with Plaintiff and reasonably accommodated him, Plaintiff would have been able to continue working more hours and earning wages, rather than being forced to use unpaid leave.

53. During the week of January 7, 2019, Plaintiff reported additional retaliation from Mr. Farrell to Ms. Johnson. Ms. Johnson told Plaintiff she would call him back about his report of further retaliation. Plaintiff never received a call back from Ms. Johnson.

54. The following week, Plaintiff received a call from Ms. Webb. Plaintiff told Ms.

10

Webb about his report of continuing retaliation to Ms. Johnson and that he had not heard back from Ms. Johnson.  Plaintiff also told Ms. Webb that Mr. Farrell's continuing retaliation was causing him to experience symptoms related to stress and have difficulty breathing.  Plaintiff told Ms. Webb that he felt he could not continue working if the retaliation was allowed to continue, due to Plaintiff's concerns for his physical safety and health.

55. The Company's human resources eventually told Plaintiff that he would have to get recertified for his FMLA leave because it was not approved for Plaintiff's absences related to Mr. Farrell's continuing harassment and Plaintiff's exacerbated symptoms.

56. Plaintiff agreed to make an appointment with his doctor and waited for weeks to hear from human resources regarding whether the continuing retaliation from Mr. Farrell would be corrected.  Plaintiff received no response.

57. Plaintiff also still had not heard anything from the Company about his requested accommodation of being relieved from dealing craps.

58. By February 19, 2019, if not sooner, Plaintiff's work conditions had become objectively and subjectively intolerable and Plaintiff was forced to accept the Company's constructive termination of his employment.

59. The Company further retaliated against Plaintiff by classifying Plaintiff as not eligible for re-hire as a result of Plaintiff's actual and/or perceived disability, and/or in retaliation for using or requesting accommodations related to same and opposing retaliation.

60. Since Plaintiff's constructive termination, the Company has re-hired Ms. Scotti in her former position.

## FIRST CLAIM FOR RELIEF
**(Disability Discrimination and Failure to Accommodate in Violation of Section 102(a) and (b)(5)(A) of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12112(a) and (b)(5)(A))**

61. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

62. Plaintiff is a disabled person within the meaning of the ADA.

63. Plaintiff's asthma and severe allergies are physical impairments which, without ameliorative measures, substantially limit one or more major life activities as compared to the general population, including breathing. When active, Plaintiff's medical condition further affects the operation of his respiratory system.

64. Though Plaintiff suffered from a disabling medical condition at the time of his termination, Plaintiff was qualified for his job and capable of performing the essential functions of his position with reasonable accommodations.

65. At the time of Plaintiff's termination, Plaintiff was also regarded as being disabled by Defendants.

66. Defendants perceived Plaintiff as being substantially limited in his ability to work due to his asthma and severe allergies, when Plaintiff was not so limited.

67. Defendants discriminated against Plaintiff because of his actual and/or perceived disability by subjecting him to disparate terms, conditions and privileges of employment, including requiring him to disproportionately work at the Lady Luck casino, requiring him to deal craps with increasing frequency, failing to reasonably or promptly correct harassment, forcing him to use unpaid leave from work in lieu of a reasonable accommodation that would have allowed him to continue working, and constructively terminating Plaintiff's employment, in violation of the ADA.

68. Defendants further discriminated against Plaintiff because of his disability by denying Plaintiff reasonable accommodations and failing to engage in an interactive process calculated to develop a reasonable accommodation for Plaintiff prior to requiring Plaintiff to use unpaid leave and constructively terminating him. Such reasonable accommodation would have permitted Plaintiff to perform the essential functions of his position and would not have imposed any undue hardship on Defendant.

69. The effect of Defendants' discriminatory practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his actual and/or perceived disability, and/or Defendants' refusal to accommodate Plaintiff or engage in the interactive process in good faith.

70. Defendants' above-described conduct was intentional.

71. Defendants' above-described conduct was done with malice or reckless indifference to Plaintiff's federally protected rights.

72. As a direct and proximate result of Defendants' above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

**SECOND CLAIM FOR RELIEF**
**(Retaliation in Violation of the ADA, as amended, 42 U.S.C. § 12203(a))**

73. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

74. In the months leading up to his constructive termination, Plaintiff engaged in multiple instances of protected activity under the ADA, and Plaintiff was retaliated against as a

13

result.  For example, on or about November 21, 2018, Plaintiff made requests for reasonable accommodation related to his actual and/or perceived disability.  Specifically, Plaintiff requested the accommodation of being allowed to take intermittent leave from work and being relieved of dealing craps.  In making these requests, Plaintiff was engaging in activity protected under the ADA.

75. On November 23, 2018 and for months thereafter, Plaintiff also made reasonable reports of discrimination based on harassment from the Company's managers, including hostile text messages and comments, intimidating behavior targeting Plaintiff, sending Plaintiff to work at the Lady Luck more frequently to earn less compensation, requiring Plaintiff to deal craps with more frequency to exacerbate his symptoms, requiring Plaintiff to arbitrarily open new tables to keep him from dealing and earning tips, forcing Plaintiff to use unpaid leave from work in lieu of a reasonable accommodation that would have allowed him to continue working.  Plaintiff further complained about human resource's failure to reasonably or promptly correct management's continuing harassment.  In making these reports of discrimination and retaliation, Plaintiff was engaging in protected activity under the ADA.

76. Defendant retaliated against Plaintiff after he engaged in the above-described protected activity by subjecting him to hostile text messages and comments, engaging in intimidating behavior targeting Plaintiff, sending Plaintiff to work at the Lady Luck casino more frequently to earn less compensation, requiring Plaintiff to deal craps with more frequency to exacerbate his symptoms, requiring Plaintiff to arbitrarily open new tables to keep him from dealing and earning tips, failing to reasonably or promptly correct harassment, forcing Plaintiff to use unpaid leave from work in lieu of a reasonable accommodation that would have allowed him

to continue working, and constructively terminating Plaintiff's employment and making him ineligible for rehire.

77. These are consequences that would tend to discourage similarly situated employees from requesting accommodations related to a protected medical condition, and that would similarly tend to chill reasonable reports of violations of the ADA.

78. Defendants' above-described conduct was intentional.

79. Defendants' above-described conduct was done with malice or with reckless indifference to Plaintiff's federally protected rights.

80. As a direct and proximate result of Defendants' above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience, and he is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

### THIRD CLAIM FOR RELIEF
**(Interference in Violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*)**

81. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

82. The FMLA's purpose is to address the problem of "inadequate job security for employees who have serious life conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(b)(1).

83. Defendants operate in interstate commerce and have over 50 employees within a 75-mile radius of the location where Plaintiff was employed. Defendants are therefore a "covered employer," as defined at 29 U.S.C. § 2611(4) under the FMLA.

84. Plaintiff was an "eligible employee" entitled to the protections of the FMLA when his need for leave arose.

85. Plaintiff was qualified to obtain leave under the FMLA in that he had a serious health condition.

86. By refusing to engage in an interactive process with Plaintiff concerning his request for reasonable accommodation that would have allowed him to continue working, increasing the frequency that Plaintiff was required to deal craps, refusing or failing to stop the continuing retaliation that exacerbated Plaintiff's symptoms, and constructively terminating Plaintiff's employment, Defendants violated 29 U.S.C. § 2615(a)(1) by unlawfully interfering with Plaintiff's right to protected, voluntary medical leave under the FMLA. Plaintiff was prejudiced by Defendants' interference, in that Plaintiff exhausted FMLA benefits he would otherwise not have used had Defendants not interfered with his right to voluntarily use his FMLA leave.

87. Defendants further constructively terminated Plaintiff while Plaintiff was in the process of getting recertified for FMLA leave because of Defendants' refusal to engage in an interactive process with Plaintiff concerning his request for reasonable accommodation that would have allowed him to continue working, increasing the frequency that Plaintiff was required to deal craps, and refusing or failing to stop the continuing retaliation that exacerbated Plaintiff's symptoms. Defendants constructively terminated Plaintiff to prevent the exercise of his right to become recertified and take voluntary medical leave under the FMLA.

88. Defendants' violations of the FMLA were willful and without justification.

89. Defendants' above-described conduct and violations of the FMLA were done with malice and oppression and with a conscious disregard for Plaintiff's rights under the FMLA.

90. Plaintiff is entitled to damages equal to his lost wages, salary, employment benefits and other compensation denied or lost, liquidated damages as provided under the FMLA, costs, attorneys' fees, interest, and equitable relief as deemed appropriate.

**FOURTH CLAIM FOR RELIEF**
**(Retaliation in Violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*)**

91. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

92. Plaintiff engaged in a protected activity by exercising his right to request and take leave under the FMLA.

93. Defendants took actions that a reasonable employee would have found materially adverse by subjecting Plaintiff to hostile text messages and comments, engaging in intimidating behavior targeting Plaintiff, sending Plaintiff to work at the Lady Luck casino more frequently to earn less compensation, requiring Plaintiff to deal craps with more frequency to exacerbate his symptoms, requiring Plaintiff to arbitrarily open new tables to keep him from dealing and earning tips, failing to reasonably or promptly correct harassment, forcing Plaintiff to use unpaid leave from work in lieu of a reasonable accommodation that would have allowed him to continue working, and constructively terminating Plaintiff's employment and making him ineligible for rehire. Defendants further retaliated against Plaintiff because he attempted to exercise rights protected under the FMLA by becoming recertified for FMLA leave.

94. Defendants' violations of the FMLA were willful and without justification.

95. Defendants' above-described conduct and violations of the FMLA were done with malice and oppression and with a conscious disregard for Plaintiff's rights under the FMLA.

96.     Plaintiff is entitled to damages equal to his lost wages, salary, employment benefits and other compensation denied or lost, liquidated damages as provided under the FMLA, costs, attorneys' fees, interest, and equitable relief as deemed appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendants and order the following relief as allowed by law:

A.      Compensatory damages including, but not limited to, those for past and future pecuniary and non-pecuniary losses, garden-variety emotional distress, pain, inconvenience, mental anguish, and loss of enjoyment of life;

B.      Liquidated damages under the FMLA;

B.      Punitive damages for all claims as allowed by law;

C.      Attorneys' fees and costs of this action;

D.      Pre-judgment and post-judgment interest at the highest lawful rate; and

E.      Such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 15th day of June 2020.

            **HKM EMPLOYMENT ATTORNEYS LLP**

            By: *s/ Shelby Woods*
              Claire E. Hunter (39504)
              Shelby Woods (48606)
              HKM Employment Attorneys LLP

730 17th Street, Suite 750
Denver, Colorado 80202
chunter@hkm.com
swoods@hkm.com
*Attorneys for Plaintiff Chaz Simmons*